IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TYNEL STEWARD,

     Plaintiff,

v.                                Case No. 13-cv-1073 WJ/GBW

ARTHUR ANDERSON, *Administration/Warden,*
and MARIO LUCERO, *Lieutenant,*

     Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on a Motion to Dismiss Plaintiff's Amended Complaint (*doc. 10*) that was filed by Defendants Arthur Anderson and Mario Lucero (*doc. 34*). Having reviewed the motion, subsequent briefing (*docs. 34, 36*), and the applicable law, I recommend that the Court GRANT the Motion. I further recommend that the Court GRANT Defendants' Motion to Strike (*doc. 49*) Plaintiff's Second Amended Complaint (*doc. 47*); DENY Plaintiff's Motion for Protective Order (*doc.45*); and DENY AS MOOT Plaintiff's Motion/Application for Leave to Proceed in forma pauperis (*doc. 48*).

### I.    PROCEDURAL POSTURE

Plaintiff is incarcerated at the Lincoln County Detention Center. He initially filed suit in state court against Emerald Correctional Management, L.C.C. (Emerald), which runs the Lincoln County Detention Center, alleging various constitutional rights

violations.  Emerald removed the case to federal court on November 1, 2013.  *Doc. 1.*

Emerald then moved for a more definite statement (*doc. 4*), which was granted (*doc. 9*).

On November 19, 2013, Plaintiff timely amended his complaint and added ten new

defendants.  *Doc. 10.*

Emerald filed a motion to dismiss (*doc. 11*), which the Court granted on April 25,

2014, thereby dismissing Plaintiff's claims against Emerald without prejudice (*doc. 27*).

The Court also dismissed seven of the ten added defendants without prejudice *sua*

*sponte* under 28 U.S.C. § 1915(e)(2) and Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[1]  *Id.*  Only Defendants Anderson, Lucero, and Donald Humphrey remained.

Defendant Humphrey was later dismissed after Plaintiff failed to respond to a show

cause order requiring him to provide an updated address for Defendant Humphrey so

that service of process could be executed.  *Doc. 32*.

Currently, Defendants Arthur Anderson, Warden of the Lincoln County

Detention Center, and Mario Lucero, a lieutenant at that facility, are the sole remaining

defendants.  Against these Defendants, the Court reads Plaintiff's Complaint to allege

three causes of action for violations of Plaintiff's (1) Eighth Amendment right to be free

from cruel and unusual punishment, (2) Fourteenth Amendment right to procedural

---

[1] The Court dismissed Defendants Felix Ortiz, Debra Griffo, FNU Lacky, Tommy Smith, FNU Sibert, FNU Wolf, and FNU Sedlo.

due process, and (3) Fourteenth Amendment right to equal protection.  *See doc. 10.*[2]

Defendants argue that these claims should be dismissed under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Since filing his Complaint, Plaintiff has also filed a Motion for Protective Order

(*doc. 45*), a Motion/Application for Leave to Proceed in forma pauperis (*doc. 48*), and a

Second Amended Complaint (*doc. 47*).  Defendants responded to Plaintiff's Motion for

Protective Order (*doc.* 46), and moved to strike his Second Amended Complaint (*doc.*

*49*).

## II.    FACTUAL ALLEGATIONS[3]

Plaintiff Tynel Steward is an inmate at the Lincoln County Detention Center.  *Doc. 10*

at 4.

Under the heading, "Count I," Plaintiff outlines his claim for cruel and unusual

punishment, which the Court interprets as also alleging a procedural due process claim.

He alleges that, according to the Lincoln County Detention Facility's policy,

"Inmate/Detainees are to receive no more than sixty (60) days in segregation for any

rule violation that arises from one incident.  Continuous confinement for more than 30

---

[2] Citations to page number reflect the .pdf page number associated with Plaintiff's Amended Complaint on the docket and not the number printed on the Complaint itself.

[3] The undersigned considers only those allegations contained in Plaintiff's Amended Complaint (*doc. 10*) and will not, as Plaintiff requests (*see, e.g. doc. 35* at 1), consider allegations contained in his prior pleadings. *Giles v. U.S.*, 906 F.2d 1386, 1389 (10th Cir. 1990) ("[A] pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified.") (internal quotation marks omitted).

days requires the review and approval of the warden."[4]  *Id.* at 4.  Plaintiff argues that this policy and his constitutional rights were violated when, on September 23, 2012, "[he] was . . . sanctioned to sixty days in segregation by Lt Mario Lucero.  Approval wasn't signed off on by the Warden.  [He] spent round 44 days in the seg unit."  *Id.*

Plaintiff further alleges that, on February 22, 2013, he was "thrown back into the seg unit; afforded due process and not sanctioned to seg time by Lt. Mario yet [he] remained confined in the seg unit unjustifiedly for the next 96 days until [he was] released to Dona Ana County."  *Id.*

On July 27, 2013, Plaintiff was again "thrown back in the seg unit for protective custody by Chief Felix . . ."  *Id.*  He claims that in order "to keep [him] in the seg unit Warden Anderson falsifie[d] documentation switching why [he was] in the seg unit [from protective custody] to disciplinary . . . without affording [Plaintiff] due process." *Id.*  Plaintiff alleges he spent 102 days in solitary confinement before he was released back into the general population.  *Id.*

Under the heading, "Count II," Plaintiff outlines his claim for inhumane treatment, which the Court interprets as presenting both a cruel and unusual punishment and a due process claim.  He claims that the "Lincoln County Detention Center[']s segregation deprivation unit consists of cells with 'add on' covers over the back window and door window while the COs have orders to ensure the feed ports and

---

[4] To avoid overusing "[sic]," grammatical and spelling errors in Plaintiff's Complaint are reproduced without this notation.

window on the Door remain closed rendering an Inmate/Detainee confined to the cell unable to decern nite from day." *Id.*

Finally, under the heading, "Count III," Plaintiff outlines his claim for racial discrimination. He alleges that, "per policy of LCDC staff are to treat Inmate/Detainees with Respect and Dignity." *Doc. 10* at 6. He claims, however, that on September 22, 2012, "Chief Humphrey racially disrespected [him] by attempting to have [him] cut off [his] hair because in the records [he is] listed as Black and as advised per administration only 'native Americans' are allowed the preference style of a Mohawk." *Id.* Plaintiff goes on to state that "in accordance with the inmate handbook/policy, Inmate/Detainees can wear their hair however they want unless working in the Kitchen or around Heavy machinery." *Id.*

Plaintiff also outlines an incident on October 4, 2014, during which Officer Sedlo[5] "Racially Disrespected [him] with a Racial Remark of [his] skin color having a darker complexion than [Officer Sedlo's]." *Id.* He cites to "Grievance Form # 497," which he attached to his Complaint and which gives a more detailed account of the event, but which did not involve either of the remaining Defendants. *See id.* at 5. Later in the same paragraph, Plaintiff alleges, "In my numerous pleas for help-grivence form in which have been filed and never properly answered pursuant to the grivence flow

---

[5] Sedlo appears to derive from an incorrect reading of Plaintiff's Complaint, which speaks of Officer Sedio (which, in turn, is likely intended to refer to Officer Sedillo). *See doc. 10* at 5 (Plaintiff's Grievance Form against Officer Sedillo).

chart-I've been reguarded as less than a human being as staff advise all what I've been subjected to is in accordance with the orders of Warden Arthur Anderson." *Id*. at 4.

Elsewhere in his Complaint, Plaintiff alleges that, in performing the above actions, Defendants were acting under color of state law pursuant to their authority as "peace officers" under N.M. STAT. ANN. § 33-3-28 (West 1978). *Doc. 10* at 3.   Plaintiff also alleges that he has previously sought appropriate administrative relief for the acts complained of in his Complaint. *Id*. at 7.  He states, "grievence procedure exhausted . . . though proper grievence procedures weren't followed to the extent of a lot of my grievences never being heard from or seen again." *Id*.

To remedy his alleged mistreatment, Plaintiff seeks "[f]ifteen hundred ($1500.00) dollarz a day from September 22nd 2012 till [his] release from th[e] facility and one hundred million ($100,000,000) dollarz in punitive damages for the severe emotional distress (mental anguish) which has Intentionally Been Bestowed upon [him]." *Id*.

## III.   STANDARD OF REVIEW

When ruling on a motion to dismiss under Rule 12(b)(6), courts are to proceed in two steps.  First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Then, accepting the well-pleaded factual allegations as true and viewing them in the light most favorable to the plaintiff, the court is to consider whether "they plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825

(10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677-78); *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at  678.

Where, as here, a party is proceeding *pro se*, the court is to liberally construe his pleadings.  *Casanova*, 595 F.3d at 1125.  "But the court [is] not [to] 'assume the role of advocate for the pro se litigant.'" *Baker v. Holt*, 498 F. App'x 770, 772 (10th Cir. 2012) (unpublished) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)). Accordingly, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (quotations and citations omitted).  In other words, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Hall*, 935 F.2d at 1110.  Prisoners are particularly well-situated to plead facts outlining their treatment since it is experienced first-hand.  *See Gee v. Pacheco*, 627 F.3d 1178, 1185-86 (10th Cir. 2010).

IV.   ANALYSIS

The Court reads Plaintiff's complaint as potentially giving rise to a cruel and unusual punishment claim and a procedural due process claim against each Defendant,

as well as an equal protection claim against Defendant Anderson.[6]  Each claim will be addressed in turn.  Ultimately, the undersigned concludes that Plaintiff has not stated any valid claims, and recommends GRANTING Defendant's Motion to Dismiss.

### A. Plaintiff's Eighth Amendment Claim Fails Because He Does Not Allege a Sufficiently Serious Deprivation of a Minimal Civilized Necessity.

When challenging the conditions of confinement, a plaintiff must allege sufficient facts to meet both the objective and subjective component of an Eighth Amendment claim.  Under the objective component, "the alleged deprivation must deny 'the minimal civilized measure of life's necessities.'"  *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1022 (10th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 247 (1981)).  Under the subjective component, "the responsible official must have a sufficiently culpable state of mind, i.e. deliberate indifference."  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 299-304 (1991)).  Because I find that Plaintiff's Complaint does not satisfy the objective prong, I recommend that the Court dismiss Plaintiff's Eighth Amendment claims against both Defendants, and will not reach the question of whether the subjective prong is met.[7]

---

[6] Under the heading, "Nature of the Case," Plaintiff avers that when he attempted to explain that he was racially discriminated against, he "was retaliated against and the retaliation has been relentless and motivated by the history of my litigation and my wish to exercise my constitutional right to a fair speedy trial jury trial, due process, equal protection."  *Doc. 10* at 2.  Given the conclusory nature of these allegations, the Court does not consider them as giving rise to a First Amendment retaliation claim.  *Iqbal*, 556 U.S. at 679.

[7] Upon review of Plaintiff's handwritten Complaint, allegations against Defendant Wolf, who was previously dismissed, were discerned.  The undersigned recommends letting the dismissal of Defendant Wolf stand on the following two grounds: (1) Plaintiff fails to "allege specific facts showing that 'but for

The well-pleaded facts in Plaintiff's Complaint do not establish a sufficiently serious deprivation.  Importantly, in the context of segregation, "[s]olitary or disciplinary confinement is not per se cruel and unusual punishment."  *Gregory v. Wyse*, 512 F.2d 378, 380-81 (10th Cir. 1975).  Rather, to satisfy the objective prong, the plaintiff must allege "deprivations denying 'the minimal civilized measure of life's necessities.'" *Robards v. Stephan*, 977 F.2d 596 (10th Cir. 1992) (quoting *Seiter*, 501 U.S. at 298)). Minimal civilized necessities include, among other things, "food, warmth, [and] exercise."  *Wilson*, 501 U.S. at 304.  The Tenth Circuit has also stated that prisoners should be afforded "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing)."  *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980).  "In short, a state must provide an inmate with shelter which does not cause his degeneration or threaten his mental and physical well being." *Id.*  The inquiry under the objective prong "relies on the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered."  *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (citations and quotations omitted).

Plaintiff's Complaint alleges three incidents of confinement in the segregation unit: two involving Defendant Lucero and one involving Defendant Anderson.  First, he

---

[Wolf's] retaliatory motive, the incident[] to which he refers . . . would not have taken place," *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013) (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)), and (2) the allegation of one incident of tampering with the thermostat does not support a claim that the "official [knew] of and disregard[ed] an excessive risk to inmate health and safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

alleges that he spent 44 days in segregation after being sanctioned by Defendant Lucero. *Doc. 10* at 4.  Second, he alleges that he was kept in segregation for 96 days, despite "not [being] sanctioned to seg time by [Defendant Lucero]."  *Id*.  Third, he alleges that he was placed in the segregation unit for protective custody by a different officer, but that Defendant Anderson falsified documents and changed the reason for Plaintiff's being in segregation from protective custody to disciplinary action.  *Id.*  As a result, he spent a total of 102 days in segregation during this last incident.  *Id*.

Plaintiff's Complaint does not allege that that he was deprived of food, warmth, exercise, or basic hygiene.  Plaintiff's sole complaint about the conditions in that unit is that the windows were covered, so that he was unable to see from inside his cell whether it was night or day.  *Doc. 10* at 4.  He avers that this condition caused him severe emotional distress.  *Id*. at 6.  The undersigned recommends finding that Plaintiff has failed to state a valid claim based on the alleged conditions.

Plaintiff's Complaint essentially alleges that there was no natural light in the segregation unit.  "Whether natural light and sunlight is a necessary attribute of adequate lighting is an issue that has received scant attention." 1 MICHAEL B. MUSHLIN, RIGHTS OF PRISONERS §3:59, (4th ed. 2009).[8]  In an unpublished opinion, the Tenth Circuit

---

[8] Constant illumination or constant darkness can amount to a deprivation of a minimal civilized necessity if done in a manner that causes physical or psychological harm and if not reasonably related to a penological interest. *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (stating "[a]dequate lighting is one of the fundamental attributes of adequate shelter required by the Eight Amendment . . . [and] there is no legitimate penological justification for requiring inmates to suffer physical and psychological harm by living in constant illumination.") (internal quotations, citations, and alterations omitted); *see also Ward v.*

touched on the issue of natural light in Eighth Amendment claims where the plaintiff, among other things, was confined in a unit with no windows and poor ventilation for thirteen months without being allowed outside. *Robinson v. Corriveau*, 72 F.3d 138 (10th Cir. 1995) (unpublished). In reversing the district court's dismissal of the claim as frivolous, the court opined, "[i]t is unlikely that such extended deprivation of natural light and air would meet the minimal health and safety needs of prisoners." *Id.* at *4.

Although the court in *Robinson* surmised that the deprivation of natural light could be grounds for an Eighth Amendment violation, there are four critical distinctions between *Robinson* and this case: (1) the plaintiff in *Robinson* suffered his deprivations for thirteen straight months, (2) in a cell without windows *and* with poor ventilation, (3) was not allowed to go outside, and (4) the court was reviewing the case under the more lenient § 1915 standard, to determine whether the plaintiff's complaint was "so indisputably meritless that he has not even stated an arguable claim for relief." *Id.* at *3 (quotations and citations omitted). *Compare Denton v. Hernandez*, 504. U.S. 25, 31 (1992)

---

*McBride*, 41 F. App'x 893, 894 (7th Cir. 2002) ("not[ing] that [prisoner] might have a valid § 1983 claim if, as he claims, he suffered psychological harm from being held for weeks in a cold, perpetually lighted cell."); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004); *Chavarria v. Stacks*, 102 F. App'x 433 (5th Cir. 2004) (unpublished) (affirming dismissal for frivolousness and failure to state a claim where policy of 24-hour illumination in administrative segregation unit was reasonably related to the penological interest of "prevent[ing] guards from being assaulted by an inmate in a dark cell."); *Huertas v. Sec'y Pa. Dep't of Corrs.*, 533 F. App'x 64, 67 (3d Cir. 2013) (unpublished) (affirming summary judgment against prisoner where "constant illumination" reasonably related to legitimate penological interest of allowing "staff [to] better monitor inmates who may present a risk of harm to themselves or others, or inmates, like [appellant], who attempt to escape."). *But see Murray v. Edwards Cnty. Sheriff's Dep't*, 248 F. App'x 993, 998 (10th Cir. 2007) ("continuous lighting within a cell during a short-term period of solitary confinement, along with other restrictions, did not amount to a constitutional violation."). Unlike in these cases, Plaintiff does not allege that he was kept in a state of constant illumination or constant darkness.

(describing § 1915 standard of review) *with Iqbal*, 556 U.S. at 678 (describing Fed. R. Civ. P. 12(b)(6) standard of review).

Here, the longest Plaintiff was confined to segregation was just over three months—a significantly shorter amount of time than the Plaintiff in *Robinson*. Moreover, Plaintiff does not allege poor ventilation, nor does he allege that he was not let out of his segregation cell while in that unit.  Without such aggravating facts being alleged, neither the dicta in *Robinson* nor any other case law supports a finding that Plaintiff has stated a plausible Eighth Amendment claim.  *See, e.g., Richard v. Reed*, 49 F. Supp. 2d 485, 487 (E.D. Va.), *aff'd*, 188 F.3d 503 (4th Cir. 1999) (dismissing as frivolous an Eighth Amendment claim alleging deprivation of sunlight for one hundred days). Therefore, the undersigned recommends finding that Plaintiff's windows being covered for the periods alleged in his Complaint does not amount to a sufficiently serious deprivation to meet the objective prong of cruel and unusual punishment.

Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claims against Defendants Anderson and Lucero be dismissed without prejudice.

## B. Plaintiff Fails to State a Procedural Due Process Claim Against Either Defendant.

Plaintiff's Complaint alleges that he was deprived of liberty when he was removed from the general prison population and placed in the segregation unit on three different occasions.  *Doc. 10* at 4.  He further alleges that these deprivations were not

done in accordance with the Inmate Handbook and that he was not afforded due process. *Id.*

"It is well settled that due process protections extend to prisoners, though the extent of that protection is significantly less than that guaranteed to free persons." *Estate of DiMarco v. Wyoming Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1339 (10th Cir. 2007). When bringing a due process clause claim, the plaintiff must first demonstrate that he was deprived of a protected interest and then demonstrate that the process attendant to that deprivation was inadequate. *See Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). Because Plaintiff's Complaint fails to allege sufficient facts to demonstrate that he was deprived of a liberty interest protected by the Fourteenth Amendment, the undersigned recommends that the Court dismiss without prejudice Plaintiff's due process claims against both Defendants.

1. *Plaintiff's Complaint does not set forth sufficient facts to establish a protected liberty interest against confinement in segregation.*

Liberty interests have two sources. First, they "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493-494 (1980)). Plaintiff's placement in disciplinary segregation finds no protection from this source. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (rejecting argument "that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation" and explaining non state-created interests do not

arise unless they "exceed[] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force," such as upon transfer to a mental hospital or forced administration of psychotropic drugs).

Second, a liberty interest "may arise from an expectation or interest created by state laws or policies." *Wilkinson*, 545 U.S. at 221 (citing *Wolff v. McDonnell*, 418 U.S. 539, 556-558 (1974)). For prisoners to establish an interest based in state law or policies as a protected interest, the deprivation of such interest must also "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin,* 515 U.S. at 484)). Post-*Sandin,* "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves." *Hill v. Fleming*, 173 F. App'x 664, 672 (10th Cir. 2006) (quoting *Wilkinson*, 545 U.S. at 223)). Because Plaintiff's Complaint fails to allege a deprivation that imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the undersigned recommends finding that he has not plausibly stated a claim for relief against either Defendant.

a. *Plaintiff's allegations regarding the length and conditions of segregated confinement do not plausibly establish that any of the three periods constituted an atypical and significant hardship.*

Plaintiff's Due Process claim is based on three different time periods he alleges he spent in segregated confinement.  First, Plaintiff claims that, on September 23, 2012, "[he] was . . . sanctioned to sixty days in segregation by Lt Mario Lucero.  Approval wasn't signed off on by the Warden.  [He] spent round 44 days in the seg unit."  *Doc. 10* at 4.

Next, Plaintiff alleges that, on February 22, 2013, he was "thrown back into the seg unit; afforded due process and not sanctioned to seg time by Lt. Mario yet [he] remained confined in the seg unit unjustifiedly for the next 96 days until [he was] released to Dona Ana County."  *Id.*

Finally, Plaintiff alleges that, on July 27, 2013, he was "thrown back in the seg unit for protective custody by Chief Felix . . ."  *Id.*  He claims that in order "to keep [him] in the seg unit Warden Anderson falsifie[d] documentation switching why [he was] in the seg unit [from protective custody] to disciplinary . . . without affording [Plaintiff] due process."  *Id.*  Plaintiff alleges he spent 102 days in solitary confinement before he was released back into the general population.  *Id.*

In determining whether an inmate has endured an atypical or significant hardship, the Tenth Circuit has stated that "the proper approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's

sentence and confinement." *Rezaq v. Nalley*, 677 F.3d 1001, 1012 (10th Cir. 2012).

Perhaps the most important factor to be considered is the length of the segregation. *See*

*Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("[W]e have emphasized that the

duration of [segregated] confinement is a distinct factor bearing on atypicality and must

be carefully considered."); *Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (court

must address both the duration and degree of plaintiff's restrictions).  Other factors to

be considered include "whether: (1) the segregation relates to and furthers a legitimate

penological interest, such as safety or rehabilitation; (2) the conditions of placement are

extreme; (3) the placement increases the duration of confinement . . . ; and (4) the

placement is indeterminate . . . ."  *Rezaq*, 677 F.3d at 1012 (quoting *DiMarco*, 473 F.3d at

1342).

 With respect to duration, Plaintiff's segregated confinement periods lasted 44

days, 96 days, and 102 days, respectively.  Barring exacerbating factors, the duration of

his segregation does not support a finding that his deprivations were atypical and

significant hardships.  *See Sandin*, 515 U.S. at 474-87 (30 days in punitive segregation not

atypical and significant hardship); *see also Frazier v. Coughlin*, 81 F.3d 313 (2d Cir 1996)

(11 months segregated confinement not atypical and significant hardship); *Smith v.

Mensinger*, 293 F.3d 641 (3d Cir. 2002) (7 months of disciplinary confinement was

insufficient, by itself, to implicate protected liberty interest); *Torres v. Fauver*, 292 F.3d

141 (3d Cir. 2002) (15 days in disciplinary detention and 120 days in administrative

16

segregation insufficient to trigger due process protections); *Beverati v. Smith*, 120 F.3d

500, 504 (4th Cir. 1997) (6 months of administrative segregation not atypical and

significant), *cited with approval in Hornsby v. Jones*, 188 F. App'x 684, 689 (10th Cir. 2006).

With respect to the next factor – whether the segregation was related to and

furthered a legitimate penological interest – Plaintiff presented insufficient facts to find

that this factor weighs in favor of finding a liberty interest.  While Plaintiff makes

conclusory allegations about improper motives, it appears that much of Plaintiff's time

in segregation was for disciplinary reasons or protective custody for his own safety.  *See*

*doc. 10* at 4.  Both reasons serve legitimate penological interests.  *See Sandin*, 515 U.S. at

485 ("The punishment of incarcerated prisoners . . . effectuates prison management and

prisoner rehabilitative goals."); *Jones v. Roberts*, No. 11-3082-SAC, 2013 WL 1308272, at

*8 (D. Kan. Mar. 27, 2013) ("Preserving or promoting security by use of administrative

segregation is a legitimate goal for prison officials.").  Therefore, this factor weighs

against Plaintiff.

The next factor – whether the conditions of placement are extreme – weighs

heavily against finding that the segregation was an atypical and significant hardship.

The only specific condition of segregated confinement of which Plaintiff complains is

that the windows were covered.[9]  This deprivation cannot be considered extreme absent

---

[9] Plaintiff does allege the improper varying of the temperature in his cell.  *See doc. 10* at 4.  However, this occurred only on one day, and the Court does not find that this single incident of this nature could reasonably constitute an atypical and significant hardship.

an allegation that he was subjected to constant illumination or darkness, or that he was not permitted to leave the cell at all.  Moreover, the undersigned also notes that, according to Plaintiff, the conditions of any disciplinary segregation to which he was subjected were the same as the conditions of administrative or protective segregation. *See doc*. 10 at 4 ("I'm thrown back in the seg unit for protective custody by Chief Felix . . . Yet to keep me in the seg unit Warden Anderson falsifies documentation switching why I'm in the seg unit to disciplinary . . . without affording me due process.").  The fact that the conditions of disciplinary segregation apparently mirrored those of administrative segregation strongly suggests that those conditions were not an atypical and significant hardship.  *See Sandin*, 515 U.S. at 486 (holding "that [the plaintiff's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest . . . [where] record shows that, at the time of . . . punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody."); *see also Rezaq*, 677 F.3d at 1013 ("[E]xtreme conditions in administrative segregation do not, on their own, constitute an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484)).

Further, nothing in Plaintiff's Complaint suggests that placement in segregation increased the overall duration of his confinement.  Thus, this factor weighs heavily against finding that his segregation was an atypical and significant hardship.

The final factor – whether the placement in segregation is indeterminate – may weigh in favor of finding an atypical and significant hardship.  Plaintiff does appear to allege that his time periods in segregation would sometimes lengthen without him understanding the reason.  Viewing the allegations in the light most favorable to Plaintiff, these allegations could mean his placement in segregation was indeterminate at times.

Applying the facts as alleged by Plaintiff to the relevant factors, the undersigned concludes that the segregated confinement described by Plaintiff does not plausibly establish that the various periods of confinement were atypical and significant hardships sufficient to trigger Due Process protections.  Thus, the undersigned recommends dismissing his due process claim as to all Defendants.

## C. Plaintiff Fails to State an Equal Protection Claim Against Defendant Anderson.

"In a § 1983 suit . . . —where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Thus, to establish a claim against Defendant Anderson, as the Warden, for the actions of others, Plaintiff must demonstrate "(1) the

defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

Plaintiff alleges that he has "been reguarded as less than a human being" and that "staff advise all . . . [he has] been subjected to is in accordance with the orders of Warden Arthur Anderson." *Id*. at 4.  The underlying conduct Plaintiff complains of in this section of his Complaint includes (1) one officer's disrespecting Plaintiff by attempting to have Plaintiff cut his hair because only Native Americans are allowed to have their hair styled in a Mohawk, and (2) another officer's remark about his skin color. *Doc. 10* at 6.

The underlying complained of behavior—an attempted haircut and a racial remark—do not amount to harms that give rise to a constitutional remedy.[10]  Plaintiff cannot state an equal protection claim based on mere remarks, absent evidence of pervasive racial harassment or the deprivation of established rights.  *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999), *decision clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999) (holding "that an officer's use of a racial epithet, without harassment or some other

---

[10] For this same reason, the undersigned recommends affirming dismissal of Defendant Sedlo, who made the racial remark.

conduct that deprives the victim of established rights, does not amount to an equal protection violation"); *Blades v. Schuetzle*, 302 F.3d 801, 805 (8th Cir. 2002) (allegation "that a guard ridiculed the color of [a plaintiff's] palms and told him to smile so that he could be seen in the dark," though "thoroughly offensive . . . will not by itself violate the fourteenth amendment," unless "pervasive or severe enough to amount to racial harassment."). Thus, Defendant Anderson cannot be said to have caused a constitutional harm where none occurred.

Moreover, even assuming the alleged conduct amounted to constitutional harm, Plaintiff's Complaint does not allege sufficient facts that would allow the Court to make a reasonable inference that Defendant Anderson *caused* that harm. Plaintiff's Complaint alleges that the officer who attempted to cut his hair advised him that "per administration only 'native Americans' are allowed the preference style of a mohawk." *Doc. 10* at 6. Yet, in the very next sentence, Plaintiff states that "in accordance with the Inmate Hand Book/policy-Inmate/Detainees can wear their hair however they want unless working the kitchen or around Heavy machinery." *Id.* Additionally, Plaintiff's Complaint does not in any way link Defendant Anderson to the remark made about his skin color. The Complaint does state that "per policy of LCDC staff are to treat Inmate/detainees with Respect and Dignity." Thus, at best, Plaintiff alleges that certain officers engaged in behavior that conflicts with prison policy. This allegation is insufficient to support a constitutional claim.

21

Though it is possible that Defendant Anderson ordered the officers to behave as they did, Plaintiff's bare allegation that "staff" advised him that "all" that he has been subjected to is in accordance with Defendant Anderson's orders is a conclusory pleading not entitled to the assumption of truth. *See Iqbal*, 556 U.S. 662. Without further allegations as to Defendant Anderson's involvement in the underlying constitutional violations, Plaintiff has not plausibly stated a claim for relief against Defendant Anderson. Stated differently, the allegations fail to provide sufficient facts from which the Court could reasonably infer that Defendant Anderson played any role in Plaintiff's complained of discriminatory treatment, let alone that he acted on account of Plaintiff's race in doing so. *See Iqbal*, 556 U.S. 680-84. Accordingly, the undersigned recommends that the Court find that Plaintiff has failed to state an equal protection claim against Defendant Anderson.

## V.   OTHER MATTERS

Since filing his Complaint, Plaintiff has also filed a Motion for Protective Order (*doc. 45*), a Motion/Application for Leave to Proceed in forma pauperis (*doc. 48*), and a Second Amended Complaint (*doc. 47*). Defendants responded to Plaintiff's Motion for Protective Order (*doc. 46*), and moved to strike his Second Amended Complaint (*doc. 49*). The undersigned recommends that the Court rule against Plaintiff on each of these matters.

1. *Plaintiff's Second Amended Complaint.*

Notwithstanding both Defendants' assertion that "it is obvious that the 2nd

Amended Complaint is an attempt to do just what it says – amend the complaint . . ."

(*doc. 51* at 2), and Plaintiff's handwritten notation, "Second Amended Complaint" at the

top of the first page, Plaintiff's filing is actually a supplemental pleading because it

pertains to incidents "that happened after the date of the pleading to be supplemented."

Fed. R. Civ. P. 15(d). *Compare doc. 10* (filed November 19, 2013) *with doc. 47* (referring to

incidents occurring after December 2013). "The court may permit supplementation

even though the original pleading is defective in stating a claim or defense" and should

do so "on just terms," but Plaintiff is required to file a motion seeking permission from

the Court prior to supplementing his Complaint. *Id.* Plaintiff has failed to seek

permission, and such a failure is sufficient reason to recommend granting Defendants'

Motion to Strike (*doc. 49*). Moreover, permitting the supplementation in this case would

be inefficient and prejudicial to the opposing parties. The Court has before it a fully

briefed motion to dismiss Plaintiff's Amended Complaint. The facts in the

supplemental pleading do not cure the defects described herein. Supplementation

about new alleged violations would require a supplemental answer and/or motion to

dismiss. Denying the supplementation will not prevent Plaintiff from raising the claims

based on those facts in a new lawsuit should he wish to do so. For these reasons, the

undersigned recommends granting Defendants' Motion to Strike (*doc. 49*) and striking the pleading (*doc. 47*).

2. *Plaintiff's Motion for Protective Order.*

Next, Plaintiff's Motion for Protective Order appears to seek a preliminary injunction that would require Defendant Anderson to remove Plaintiff from segregation, return him back to "the Delta Unit from which [he] was discriminately removed," and "to retaliate no further in any way, shape, or form against [Plaintiff's] person (As an additional civil rights complaint is forthcoming)." *Doc. 45* at 2.

In order to obtain a preliminary injunction, Plaintiff must demonstrate, among other things, "a substantial likelihood of success on the merits . . . ." *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Given that the undersigned recommends dismissing his Amended Complaint, Plaintiff cannot demonstrate that he is likely to succeed on the merits. His Motion for Protective Order (*doc. 45*) should be denied accordingly.

3. *Motion to Proceed In Forma Pauperis.*

Because this case was removed from state court by the Defendants, Plaintiff has not been required to pay any fees or costs as of today. In light of the foregoing recommendations, the undersigned recommends denying as moot Plaintiff's Motion to Proceed Motion/Application for Leave to Proceed in forma pauperis (*doc. 48*).

## VI.   CONCLUSION

For the forgoing reasons, I recommend that the Court (1) GRANT Defendants' Motion (*doc. 34*) and DISMISS all of Plaintiff's claims against Defendants Anderson and Lucero without prejudice; (2) GRANT Defendants' Motion to Strike (*doc. 49*) Plaintiff's Second Amended Complaint (*doc. 47*); (3) DENY Plaintiff's Motion for Protective Order (*doc. 45*); and (4) DENY AS MOOT Plaintiff's Motion to Proceed Motion/Application for Leave to Proceed in forma pauperis (*doc. 48*).

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**